IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| E. DIANNE MOREHEAD,<br><br>    Plaintiff,<br><br>v.<br><br>CITIMORTGAGE INC.,<br><br>    Defendant. | No. 3:14-cv-00475<br><br>Judge Nixon<br>Magistrate Judge Knowles<br><br>JURY DEMAND |

## ORDER

Pending before the Court is Defendant CitiMortgage Inc.'s Motion to Dismiss Counts I and III of Complaint ("Motion to Dismiss"). (Doc. No. 12.[1]) For the reasons below, Defendant's Motion is **GRANTED**.

### I. BACKGROUND

*A. Factual Background[2]*

At some point previous,[3] Plaintiff E. Dianne Morehead obtained a mortgage loan through Defendant and subsequently entered into several forbearance agreements with Defendant in connection with the loan in lieu of threatened foreclosure proceedings regarding residential real property located at 174 Bolivar Highway, Jackson, Tennessee (the "Property"). Under such agreements entered into between May 2006 and November 2007, Plaintiff timely made every payment required as evidenced by payments accepted by Defendant from Western Union. Each time Plaintiff made her timely monthly payment, Defendant wrongfully represented that the

---

[1] While Doc. No. 10 remains pending, counsel for Defendant previously requested such entry be disregarded. Accordingly, the Court references only Doc. No. 12.

[2] All facts are drawn from Plaintiff's Complaint (Doc. No. 1), unless otherwise noted.

[3] While Defendant's Answer states Plaintiff obtained her loan on March 12, 1998 (Doc. No. 9 ¶ 5), there is no indication in the Complaint or Plaintiff's briefing as to what the exact date was.

1

payment was "past due." During the course of the forbearance process, Plaintiff communicated with Derek Kelm and Aisha Barrett, Defendant's representatives, who advised her to make a payment of $597.47 in November 2007 after making an identical payment in October 2007, and further advised her to thereafter continue making payments as set forth in the forbearance agreement until the expiration of the loan.

Upon Defendant's false representation to Plaintiff that the payments for May, June, and July 2008 were not made, Plaintiff faxed copies of the Western Union payment confirmation to Defendant. Defendant subsequently explained to Plaintiff the payments had been credited to the wrong account number and applied her payments to her account. Following this incident, Plaintiff continued to make timely monthly payments to Defendant.

In September 2008, after Plaintiff received several phone calls from Defendant about payments not being made on her account, Plaintiff again faxed the Western Union payment confirmation to Defendant, and also sent numerous telefax requests to Defendant to contact her to rectify this situation.

After Plaintiff received mail from a law firm representing Defendant notifying her about foreclosure of the Property in late November 2008, Plaintiff called the law firm and provided it with the Western Union payment confirmation and the receipt thereof by Defendant. The law firm told Plaintiff that they would "get back" to her. However, on December 1, 2008, Ms. Barrett informed Plaintiff that her house was being foreclosed upon.

In March 2009, Robert Hayes, another representative of Defendant, told Plaintiff that he was the new account manager for her loan, and that Defendant wanted to "re-do" the loan

verbally over the phone.[4] However, when Plaintiff called Ms. Barrett in April 2013, Ms. Barrett told Plaintiff that there were no "contact notes" or any other information available as to any matters on the account since February 2009.

In April 2009, Plaintiff received foreclosure documents from Defendant's law firm notifying Plaintiff that the property had been sold at foreclosure in March 2009 because Plaintiff did not make payments in July and September 2008, and the payments made in February and November of 2008 were "short." Subsequently, however, Defendant informed Plaintiff that the March 2009 foreclosure sale did not actually take place, despite the sale being published in the *Jackson Sun* newspaper. In August 2009, Defendant placed a "door tag" on the door of the property, indicating Defendant had contacted a third party to take over the property.

Between August 2009 and April 2013, Plaintiff continued to dispute the foreclosure and Defendant's claims, but the Complaint is wholly silent as to any specific occurrences during this period.

In April 2013, Defendant took the position that Plaintiff's payments via Western Union were not enough to prove that these payments had been made. Ms. Barrett further advised Plaintiff "not to call any agency or file any complaint" because it would not change Defendant's position. Thereafter, Plaintiff discovered that Defendant had misapplied her payments to an "unapplied transactions" account, thereby creating the purported default that led to the foreclosure of the Property.

*B. Procedural Background*

On November 25, 2013, Plaintiff filed her Complaint against Defendant in United States District Court for the Western District of Tennessee, raising multiple claims against Defendant

---

[4] *There is no indication in the record as to what the terms of this modified loan agreement were or whether Plaintiff agreed to this modification.*

3

arising out of her mortgage and subsequent forbearance agreements. (Doc. No. 1.) On January 15, 2014, Defendant filed its Answer to the Complaint (Doc. No. 9), along with its Motion to Dismiss (Doc. No. 12) and Memorandum in Support (Doc. No. 12-1). Upon joint motion of the parties (Doc. No. 18), the instant case was transferred to this Court on February 14, 2014. (Doc. No. 20.) On April 15, 2014, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss (Doc. No. 28-1), to which Defendant then filed a Reply on April 29, 2014 (Doc. No. 35).

## II. LEGAL STANDARD

To withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must allege "[e]nough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court has clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "[m]ore than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "'[m]erely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility' of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 546).

When ruling on a defendant's motion to dismiss, the Court must "[c]onstrue the complaint liberally in the Plaintiffs' favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). The Court must allow "[a] well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

4

III. ANALYSIS

Plaintiff brings multiple claims against Defendant in this case, but Defendant moves to dismiss only two of the four counts in the Complaint. Specifically, Defendant asks the Court to dismiss Count I, containing claims for fraud, fraudulent inducement, and fraudulent misrepresentation ("fraud claims"); and Count III, an unjust enrichment claim. (Doc. No. 12-1 at 1–2.) The Court evaluates each argument in turn.

*A. Fraud Claims*

Defendant claims Plaintiff's fraud claims began to accrue, at the latest, in April 2009, when Plaintiff received foreclosure documents from Defendant's law firm notifying her of the property's March 2009 foreclosure sale and her failure to make full payments on the loan for four months in 2008. (*Id.* at 5.) Defendant argues the applicable statute of limitations is three years from the accrual of the cause of action. (*Id.* (citing *Gilliard v. JP Morgan Chase Bank, N.A.*, No. 3:12-CV-236, 2012 WL 6139922, at *6 (E.D. Tenn. Dec. 11, 2012).) As Plaintiff filed her Complaint on November 25, 2013, four and half years after the cause of action accrued, Defendant argues Plaintiff's fraud claims are time-barred and should be dismissed. (*Id.* at 5–6.) Plaintiff responds that the statute of limitations on her fraud claims did not begin to run until April 2013 as Defendant was continuing to misrepresent the status of Plaintiff's loan and concealing the truth from Plaintiff on that date, thus tolling the statute of limitations. (Doc. No. 28-1 at 4–6.) Additionally, Plaintiff claims the applicable statute of limitations is six years as she seeks compensation for the Property as her remedy, not the Property itself. (*Id.* at 7–8.)

Actions for injuries to personal or real property, as well as for detention or conversion of personal property, must be commenced within three years of the accrual of the cause of action. Tenn. Code Ann. § 28-3-105 (2014). "A cause of action accrues for either intentional or

5

negligent misrepresentation when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof." *Med. Educ. Assistance Corp. v. State*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999). The three year statute of limitations for intentional or negligent misrepresentation is tolled "only during the period when the plaintiff has no actual or constructive knowledge of the alleged wrong." *Ne. Knox Util. Dist. v. Stanfort Const. Co.*, 206 S.W.3d 454, 459 (Tenn. Ct. App. 2006). Additionally, in order to establish fraudulent concealment such that the statute of limitations is tolled,

> a plaintiff must prove the following: (1) that the defendant took affirmative action to conceal the cause of action or remained silent and failed to disclose material facts despite a duty to do so; (2) that the plaintiff could not have discovered the cause of action despite exercising reasonable care and diligence; (3) that the defendant had knowledge of the facts giving rise to the cause of action; and (4) that the defendant concealed material facts from the plaintiff by withholding information or making use of some device to mislead the plaintiff, or by failing to disclose information when he or she had the duty to do so.

*Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 625 (Tenn. 2002) (citing *Shadrick v. Coker*, 963 S.W.2d 726, 735–36 (Tenn. 1998)).

Plaintiff's fraud claims appear to relate only to Defendant's alleged misapplication or failure to properly credit Plaintiff's payments made in February, May, June, July, September, and November 2008. (Doc. No.1 ¶¶ 8, 19, 27, 29.) Plaintiff claims she could not have discovered the fraud and misrepresentation in 2008 or 2009 because "Defendant was still misrepresenting to Plaintiff the status of her loan as being unpaid" in April 2013. (Doc. No. 28-1 at 5.) However, Plaintiff's argument misapplies fraudulent concealment for the purpose of tolling the statute of limitations.

Based on the Complaint, Plaintiff was undoubtedly on notice that Defendant had misapplied or failed to apply her payments correctly in April 2009, when she received

6

documents indicating the Property had been sold at foreclosure from a law firm purporting to represent Defendant. Following this discovery, however, Defendant advised Plaintiff that the foreclosure did not, in fact, take place. Standing alone, this action could serve to toll the statute of limitations because of the potential fraudulent concealment of the cause of action by Defendant, i.e. Defendant fraudulently concealing the fact that the foreclosure had occurred prevented Plaintiff from discovering the fraud on her account.[5] However, Plaintiff subsequently discovered a "door tag" on the Property in August 2009, indicating "Defendant . . . had contacted a third party to take over the Property." (Doc. No. 1 ¶ 21.) Even assuming Defendant's actions following Plaintiff's receipt of the foreclosure documents served to toll the statute of limitations, Defendant's placement of the "door tag" on the property, as explained by the Complaint, served to once again put Plaintiff on notice that Defendant had foreclosed on the Property. Further, as previous documents had explained that the foreclosure was based on missing or short loan payments, Plaintiff had at least constructive knowledge, if not actual knowledge, of the basis of the "door tag."

From this event until April 2013, the Complaint is silent, other than noting "Plaintiff continued to dispute the foreclosure and claims by Defendant." (*Id.* ¶ 22.) As such, Plaintiff has failed to allege that Defendant undertook to conceal the cause action after the placement of the "door tag." In fact, Plaintiff's own argument suggests Defendant quite openly continued representing to Plaintiff that her loan was unpaid or underpaid, seeming clearly to put Plaintiff on notice that, accepting the facts of the Complaint as true, Defendant had fraudulently omitted or misapplied her payments. Accordingly, the Court finds that even if fraudulent concealment

---

[5] The Court need not determine conclusively that Defendant's representation amounted to fraudulent concealment sufficient to toll the statute of limitations as, even assuming it does, Plaintiff's claims are time-barred as explained *supra*.

served to toll the statute of limitations, the statute of limitations for Plaintiff's fraud claims at the latest began to run in August 2009 as, had Plaintiff exercised reasonable care and due diligence following the placement of the "door tag," she would have discovered that Defendant had committed fraudulent actions.

Additionally, Plaintiff claims the Court should apply the six-year statute of limitations set forth in Tenn. Code Ann. § 28-3-109 to her fraud claims.[6] (Doc. No. 28-1 at 7.) Plaintiff cites *German Bank v. Haller*, 52 S.W. 807, 808 (1898), as support for her argument, pointing out that in *German Bank* the Tennessee Supreme Court held the six-year statute of limitations should apply to an action by the creditor of one who has fraudulently transferred his personal property against the fraudulent transferee to recover the proceeds of the sale. In its Reply, Defendant argues that *German Bank* is "outdated and overruled," (Doc. No. 35 at 7 (citing *Gilmore v. Davis*, 185 F. App'x 476, 482 (6th Cir. 2006)), and that because Plaintiff's fraud claims involve an interest in real property such must be governed by Tenn. Code Ann. § 28-3-105 (*id.* at 7–8).

As the Tennessee Supreme Court has repeatedly explained, "'the gravamen of an action, rather than its designation as an action for tort or contract, determines the applicable statute of limitations.'" *Alexander v. Third Nat'l Bank*, 915 S.W.2d 797, 798 (Tenn. 1996) (quoting *Pera v. Kroger Co.*, 674 S.W.2d 715, 719 (Tenn. 1984)). As such, "the court must look to the basis for which damages are sought." *Keller v. Colgems-EMI Music, Inc.*, 924 S.W.2d 357, 359 (Tenn. Ct. App. 1996) (citing *Bland v. Smith*, 277 S.W.2d 377 (Tenn. 1955)); *see also Williams v. Thompson*, 443 S.W.2d 447, 449 (Tenn. 1969) (explaining that the word "actions" as used in Tenn. Code Ann. § 28-3-105 refers to the subject matter of the controversy and not to the remedial procedure). Further, the Tennessee Court of Appeals has previously explained that

---

[6] While Plaintiff has not explicitly referenced this statute in her briefing, it is clear, based on the case law she relies upon, such is the basis of her requested six-year statute of limitations as explained *supra*.

"suits for fraud, deceit or conspiracy, whether they arise incident to a contract or not are actions in tort and must be governed by the applicable tort statute of limitations." *Keller*, 924 S.W.2d at 361 (quoting *Harvest Corp. v. Ernst & Whinney*, 610 S.W.2d 727, 729–30 (Tenn. Ct. App. 1980)).

While the Court recognizes a plaintiff's method of pleading does not control the statute of limitations under Tennessee law, *see Alexander*, 915 S.W.2d at 799, the Court finds salient that Plaintiff has brought both breach of contract and wrongful foreclosure claims (Doc. No. 1 ¶¶ 36–40, 45–47) in addition to her fraud claims. As such, this is not a case where a plaintiff's causes of action "appear to be a mixture of tort and contract," *Resolution Trust Corp. v. Wood*, 870 F. Supp. 797, 807 (W.D. Tenn. 1994), but rather one where Plaintiff has independently raised both tort and contract claims. Plaintiff's fraud claims are clearly causes of actions of the same or similar quality which the Tennessee Court of Appeals has previously held "are actions in tort and must be governed by the applicable tort statute of limitations." *Keller*, 924 S.W.2d at 361 (internal quotation marks omitted). Accordingly, whether Plaintiff's fraud claims are properly construed as relating to her interest in the Property or as only based on her payments to Defendant, such claims are governed by Tenn. Code Ann. §28-3-105 and a three year statute of limitations applies. Additionally, the *German Bank* holding is inapposite in the instant case. As explained by the Tennessee Court of Appeals, *German Bank*'s holding is limited to the situation where the true owner of personal property brings a claim against the fraudulent grantee based on the grantee's "implied promise to pay for the property to prevent unjust enrichment." *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 104 S.W.3d 848, 853 (Tenn. Ct. App. 2002). In such cases, the claim arising out of the implied promise to pay thus operates as a contract claim and is governed by Tenn. Code Ann. §28-3-109(3). *See, e.g., Murray v. Grissim*, 290 S.W.2d 888,

890–92 (Tenn. Ct. App. 1956). Plaintiff's other cited support, *Dillard & Coffin Co. v. Smith*, 59 S.W. 1010 (Tenn. 1900), while containing no discussion of the applicable statute of limitations, also involved a case where a creditor sued the alleged fraudulent grantees of personal property. By contrast, in this case, Plaintiff has not brought fraud claims against an alleged fraudulent grantee, i.e. the entity to whom Defendant sold the Property at foreclosure, but rather against the fraudulent grantor, i.e. Defendant as the party that conducted the foreclosure. Accordingly, *German Bank* and *Dillard & Coffin Co.* are inapplicable.

In conclusion, the Court finds the proper statute of limitations to be the three year limitation in Tenn. Code Ann. § 28-3-105 and also finds the statute began to run, at the latest, in August 2009. As Plaintiff did not file her Complaint raising the fraud claims until November 25, 2013, over four years later, the Court finds Plaintiff's fraud claims are time-barred. Accordingly, Plaintiff's fraud claims are **DISMISSED**.

*B. Unjust Enrichment Claim*

Defendant argues Plaintiff cannot recover under an unjust enrichment theory if Plaintiff does not dispute the existence of the contract. (Doc. No. 12-1 at 8.) Plaintiff contends she should be allowed to plead her claims of unjust enrichment and breach of contract in the alternative. (Doc. No. 28-1 at 8.) Defendant responds in its Reply that Plaintiff cannot plead her quasi-contractual claim of unjust enrichment in the alternative where she has not pled any facts disputing the existence or enforceability of the contract between the parties. (Doc. No. 35 at 8.)

In Tennessee, there are three elements of an unjust enrichment claim: "1) a benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus. v. Eastman Chem.*

*Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)) (internal quotation marks and brackets omitted). However, the causes of action for breach of contract and unjust enrichment "are mutually exclusive." *Arcade Co. Ltd. v. Arcade, LLC*, 105 F. App'x 808, 811 (6th Cir. 2004); *Metro. Gov't of Nashville & Davidson Cnty. v. Cigna Healthcare of Tenn., Inc.*, 195 S.W.3d 28, 33 (Tenn. Ct. App. 2005). Accordingly, a plaintiff "cannot recover under an unjust enrichment theory if a valid contract existed, since a contract may not be implied where a valid contract exists on the same subject matter." *Thompson v. Am. Gen. Life & Acc. Ins. Co.*, 404 F. Supp. 2d 1023, 1029 (M.D. Tenn. 2005) (citing *Jaffe v. Bolton*, 817 S.W.2d 19, 26 (Tenn. Ct. App. 1991)); *see also Arena v. Schulman, LeRoy & Bennett*, 233 S.W.3d 809, 815 (Tenn. Ct. App. 2006) (same).

While Plaintiff has relied on the general principle that "Plaintiff is the master of his [sic] complaint," (Doc. No. 28-1 at 8 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)), a decision from a sister district court illustrates why Plaintiff's unjust enrichment claim must fail. In *Jack Tyler Engineering Co. v. TLV Corp.*, No. 07-2580 STA-dkv, 2008 WL 2998840, at *2 (W.D. Tenn. July 31, 2008), the plaintiff argued it could plead unjust enrichment in the alternative to its breach of contract claim, based on the fact the parties had not yet conducted discovery and the plaintiff could not know whether the contractual claim or quasi-contractual claim was the appropriate avenue for relief. However, the *Jack Tyler* court noted that neither party had challenged the underlying contract as unenforceable or incomplete as to the scope of the plaintiff's claims. *Id.* Accordingly, as there was an express contract between the parties on the issue in question, the court held the plaintiff's claim for unjust enrichment could not survive the defendant's motion to dismiss. *Id.*; *see also Stiers v. State Farm Ins.*, No. 3:11-CV-437, 2012 WL 2405982, at *6–7 (E.D. Tenn. June 25, 2012) (holding "the absence of any

11

dispute" as to the enforceability of the underlying contract precluded the plaintiff's claim for unjust enrichment).

As identified by Defendant, Plaintiff has not disputed the existence of an enforceable contract between the parties as it relates to her mortgage, (*see* Doc. No. 1 ¶¶ 5–6), nor has she pled any facts challenging the enforceability of the contract. Since her claims for breach of contract and unjust enrichment are mutually exclusive and Plaintiff does not dispute the existence or enforceability of a contract, the Court finds Plaintiff cannot maintain her claim for unjust enrichment. Accordingly, Plaintiff's unjust enrichment claim is **DISMISSED**.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss (Doc. No. 12). As such, Plaintiff's claims under Counts I and III of the Complaint (Doc. No. 1 ¶¶ 26–35, 41–44) are **DISMISSED**. Plaintiff's claims under Counts II and IV of the Complaint remain intact. Defendant's first Motion to Dismiss (Doc. No. 10) is **TERMINATED AS MOOT**.

It is so ORDERED.

Entered this the 29th day of July, 2014.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT